DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas, which accepted appellant Cornell Jones' no contest plea to possession of crack cocaine. Because we find that the trial court complied with Crim.R. 11, we affirm.
Appellant was indicted in 2000 for possession of between 25 and 100 grams of crack cocaine in violation of R.C. 2925.11(A) and (C)(4)(e), a felony of the first degree. Appellant initially pleaded guilty to a third degree felony charge of possession of crack cocaine. However, there was a miscommunication or misunderstanding between appellant, the trial court, and defense counsel about whether appellant would be eligible to serve his sentence through the Correctional Treatment Facility. When it was discovered that a jail term was mandatory and that appellant could not serve his sentence through the Correctional Treatment Facility, appellant withdrew his guilty plea. Appellant then asked that the court appoint another attorney for him. The trial court denied this request, stating that appellant's current counsel practiced regularly before him and the trial court never had a problem with him. The trial court also indicated to appellant that the confusion about the sentence was not the attorney's fault. However, the trial court agreed to continue the case to enable appellant to retain a lawyer. Appellant agreed to do so.
Appellant appeared in court again in February 2001 and indicated to the trial court that he had been unable to secure private counsel. In March 2001, the case proceeded with the same counsel to a hearing on appellant's motion to suppress. The motion to suppress was denied, and the case proceeded to trial. Following voir dire and opening arguments, defense counsel indicated to the trial court that appellant and the state had reached a plea agreement; appellant agreed to plead no contest to possession of between 10 and 25 grams of crack cocaine in violation of R.C. 2925.11(A) and (C)(4)(d), a felony of the second degree.
Before accepting appellant's no contest plea, the court personally addressed appellant, ascertaining that appellant could read, write, and understand the English language, that he was not under the influence of any substance that would hinder his ability to understand the proceedings, and that he understood the nature of the charge and the penalties. The trial court also asked appellant whether any threats or promises were made to induce him to enter his plea of no contest, and appellant indicated that no such threats or promises had been made. The court asked appellant whether he was satisfied with appointed counsel's representation, and appellant indicated that he was. The trial court then went over with appellant the rights he was waiving by entering a plea of no contest, including: (1) the right to trial by jury; (2) the right to waive a jury trial and proceed to a bench trial; (3) the right, in either case, to have his guilt proven beyond a reasonable doubt; (4) the right to issue subpoenas to compel witnesses to testify on his behalf; and (5) the right to remain silent without that silence being commented upon. The court also went over what it meant to plead no contest — that by so pleading appellant was not contesting the allegations against him, that the trial court would rely solely on the state's version of the facts, that in all likelihood the court would find appellant guilty of the offense to which appellant was pleading no contest, and that by pleading no contest appellant was, for "all practical purposes," giving up his right to appeal. The court then asked the state to set out a factual basis, which the state did, and the court then handed appellant a written plea agreement.
Before signing the written plea agreement, appellant asked the trial court whether "mandatory" time meant that he would be serving all of whatever sentence the court gave him, and that court indicated that that was correct. Appellant then signed the written plea agreement. The court asked appellant whether he had sufficient time to review the agreement and whether he had any questions about it. Appellant indicated that he had sufficient time to review it and that he had no questions about it. The court then verified that it was appellant's signature that appeared on the form, and he gave appellant another chance to ask any questions he might have. Appellant indicated that he had no questions. The court again reiterated that, because of the plea agreement, the case would not be proceeding to trial and would instead be referred to the probation department. The court then stated:
 "The Court finds the defendant appeared in open Court, was orally and in writing advised of all of his constitutional rights, including any limited rights to appeal, and he made a knowing, intelligent and voluntary waiver of those rights. The plea of no contest to the offense of possession of crack cocaine, between 10 grams and 25 grams in violation of Ohio Revised Code section 2925.11(a)(c)(4)(d) [sic], a felony of the second degree is hereby accepted, and based upon the statements of the prosecuting attorney, the defendant is found guilty and this entry is hereby ordered filed. * * *"
The trial court then asked defense counsel whether appellant wished to have a probation report completed before sentencing, and defense counsel indicated that appellant would waive that report. The court proceeded to sentencing.
Upon beginning the sentencing phase, the court heard briefly from defense counsel and then gave appellant an opportunity to be heard. Appellant stated:
 "Yes. I want to say thanks to Mr. Bender [defense counsel] for helping me out throughout this case. You know he helped me as much as he could, that I'm taking this plea today because of I wasn't able to hire me a lawyer to fight my case, and that by now I'm in the predicament that I don't feel I could win a case, but one thing I want you to know is I'm taking the plea but, Your Honor, I'm not guilty and I do have a little daughter, got a little daughter that's just been born. She'll be a year old in August. You know, like you said, I was with the wrong people and I was in the wrong place at the wrong time. While I'm serving my time I will make sure my problem, I get help for it, and my problem get solved and when I get out I want to be a productive citizen. I want get away from all the bad things. I want to take care of my daughter. I'm going to be gone from her for a little while. I have an out date, so I will be coming home to her. Basically, that's it. I'm twenty years old. I never caught any cases, I never been in jail for anything. Like I say, I was in the wrong place at the wrong time, and I'm not guilty."
The court responded:
 "Mr. Jones, just to make sure that we understand each other, you're [sic] pleading no contest. A plea of no contest to a lesser offense can in fact be avoiding the possibility of being convicted of the greater offense with a greater penalty or sanctions. Do you understand that?"
The following exchange then took place:
"MR. JONES: I don't. Did you say —
 "THE COURT: If we continued with the trial, the jury would decide whether or not you're guilty of the felony of the first degree.
"MR. JONES: Right.
 "THE COURT: And that carries a mandatory sentence. It also carries higher parameters —
"MR. JONES: Yeah.
 "THE COURT: So, I assume that you're entering this plea of no contest here to avoid the possibility of being convicted of something more serious.
 "MR. JONES: No, I'm entering this plea of no contest because I — I don't have money. I didn't have money to obtain me a higher lawyer that could look to my case a little more deeply. Don't get me wrong[;] he's helped me as much as he could. Do you understand? But right now the way of looking for me — like I say, I got a little daughter and if I take the plea I can get out. If I take it all the way, I want to take it all the way. I been offered a F3 and could have went an [sic] did eight months and get out, but I'm not guilty, but now that is looking like I'm going to have to go to jail because I really don't have faith and I never have faith. That's something I have to establish. I want to take the plea. I want to get out. I don't want to go to jail for a real long time especially for someone else."
The trial court then sentenced appellant to a three-year prison term and ordered him to pay a fine of $7,500. This appeal followed. Appellant sets out one assignment of error for our review:
"SOLE ISSUE
 "THE DEFENDANT-APPELLANT'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, VOLUNTARILY ENTERED, THEREFORE, THE COURT ABUSED ITS DISCRETION WHEN IT ACCEPTED THE PLEA, IN VIOLATION OF RULE 11."
Crim.R. 11(C)(2) provides:
 "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with under-standing of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.
"* * *."
The purpose of Crim.R. 11 is to facilitate a determination of whether a plea is voluntarily given. State v. Nero (1990), 56 Ohio St.3d 106, 107. The Supreme Court of Ohio has stated that "literal compliance" with Crim.R. 11 is preferable, but a plea will not be subject to vacation as long as the reviewing court finds "substantial compliance" with the rule. Nero, 56 Ohio St.3d at 108. The Supreme Court of Ohio defined "substantial compliance" as follows:
 "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect." (Citations omitted.)
Id. See, also, State v. Richardson (Aug. 10, 2001), Lucas App. No. L-00-1195; State v. Pettry (Mar. 1, 2000), Hancock App. Nos. 5-99-44 and 5-99-45; State v. Bowers (Dec. 19, 1996), Cuyahoga App. No. 70086; Statev. Harris (Sept. 22, 1994), Cuyahoga App. No. 63239.
In his sole assignment of error, appellant claims that certain statements he made relating to his inability to hire a lawyer indicate that his plea was not voluntary; it was given because he lacked faith in his attorney. According to appellant, this lack of faith stemmed from the confusion surrounding the sentence for the first plea he tendered.
Upon review of the record, we find that before accepting appellant's no contest plea, the trial court scrupulously complied with Crim.R. 11. And, during the plea colloquy, appellant indicated that he understood the nature and effect of his plea and all the rights he was giving up by entering his plea. It was not until after the trial court accepted his plea that appellant made the statements about entering the plea because he could not afford a private attorney. We find no authority holding that a plea can be invalidated by statements made after the plea is accepted. Even if we were to consider appellant's statements about hiring an attorney as part of the plea colloquy, we would still find that the trial court substantially complied with Crim.R. 11. It is more than clear in the record that appellant subjectively understood the "implications of his plea" and the "rights he was waiving." See Nero,56 Ohio St.3d at 108. We find appellant's sole assignment of error not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J., CONCUR.